IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LESLIE CUNNINGHAM,** : | |
| : | |
| Plaintiff : | Case No. 2:21-cv-0120 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **ACCOUNT PROCESSING GROUP** : | Magistrate Judge Kimberly A. Jolson |
| **LLC,** *et al.*, : | |
| : | |
| Defendants : | |

**OPINION & ORDER**

This matter is before the Court on Plaintiff Leslie Cunningham's Motion for Default Judgment against Defendants Account Processing Group LLC and Cory Carruba. (ECF No. 10). For the reasons that follow, Plaintiff's Motion is **GRANTED**, a **DEFAULT JUDGMENT** is entered against the two named Defendants, and Plaintiff is awarded **$15,773.50** in total damages, costs, and fees.

**I. BACKGROUND**

In 2015, Plaintiff obtained a payday loan from "Check N' Go" to purchase household items and everyday essentials. (ECF No. 1 ¶¶ 39–40). The account entered default and was sold first to JTM Capital Management LLC, then to Defendant Account Processing Group LLC (hereinafter, "APG"). (*Id.* ¶¶ 41–42). Defendant Carruba, a debt collector by trade, founded APG and controlled its alleged acts. (*Id.* ¶¶ 17, 21, 27). Plaintiff alleges that APG engaged in a "campaign of harassment, intimidation, and extortion" beginning in January of 2020 and lasting through March 2020. (*Id.* ¶¶ 32, 43–44). Plaintiff states that Defendants made phone calls as many as eight times a day to Plaintiff and her family members, in which Defendants threatened legal action regarding the "Check N' Go" debt and often left harassing and embarrassing messages. (ECF No. 1 ¶¶ 43–

1

44; No. 10-1 ¶¶ 2–7). Plaintiff filed suit on January 11, 2021, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; and the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.02(A). (ECF No. 1 ¶ 1).

Service was perfected on Defendants APG and Carruba on March 10 and 20, 2021, respectively. (ECF Nos. 4 & 5). Each failed to answer by their responsive pleading deadlines of March 31 and April 12, 2021. Plaintiff applied for an entry of default against Defendant APG on June 1, 2021, pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 6). The Clerk entered APG's default the next day. (ECF No. 7). Plaintiff then applied for an entry of default against Defendant Carruba on June 22, 2021, which the Clerk entered three days later. (ECF Nos. 8 & 9). Defendants since have failed to appear and have not moved to set aside the defaults. Plaintiff filed a Motion for Default Judgment on August 16, 2021, seeking to hold Defendants APG and Carruba jointly and severally liable for $15,773.50 in damages, costs, and fees. (ECF No. 10).

## II. DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 governs defaults and default judgments. The first step is entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default is entered, a party may take the second step by moving for default judgment. Fed. R. Civ. P. 55(b). At that stage, "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Arthur v. Robert James & Assocs. Asset Mgmt., Inc.*, 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) (internal quotation marks omitted).

"An entry of default does not automatically entitle the plaintiff to a default judgment." *Methe v. Amazon.com.dedc, LLC*, 2019 WL 3082329, at *1 (S.D. Ohio July 15, 2019). "The

2

plaintiff must still show that, when all of the factual allegations in the complaint are taken as true, the defendant is liable for the claim(s) asserted." *Id.*; *see also F.C. Franchising Sys., Inc. v. Schweizer*, 2012 WL 1945068 at *3 (S.D. Ohio May 30, 2012) ("'[I]t remains for the district court to consider whether the unchallenged facts constitute a cause of action, since a party in default does not admit mere conclusions of law.'" (quoting *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010))).

When considering whether to enter default judgment, the Sixth Circuit instructs courts to consider the following factors:

> (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); and *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193–94 (6th Cir. 1986)). The Court will address these factors in turn, beginning with the sufficiency of the Complaint and the merits of the claims.

### A. Sufficient and Meritorious Claims

#### 1. *Violations of the Fair Debt Collection Practices Act (Count One)*

In Count One of the Complaint, Plaintiff alleges violations of the FDCPA in nine separate ways. (ECF No. 1 ¶ 57). To show a violation of the FDCPA under 15 U.S.C. § 1692, a plaintiff must satisfy the following elements:

> (1) [the plaintiff] is a consumer as defined by the FDCPA, (2) the debt arose out of transactions which are primarily for personal, family or household purposes, (3) the defendant is a debt collector as defined by the FDCPA, and (4) the defendant violated the prohibitions set forth in § 1692e.

3

*Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015) (internal quotation marks omitted). "The FDCPA is a strict-liability statute: A plaintiff does not need to prove knowledge or intent, and does not need to have suffered actual damages." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448–49 (6th Cir. 2014) (internal citations omitted).

Taking the facts stated in the Complaint as true, the Court finds Defendants are liable for violations of the FDCPA. First, Plaintiff alleges that she is a consumer, as the Complaint states she is a "natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3); *see* ECF No. 1 ¶¶ 15, 39, 54. Second, Plaintiff alleges that the debt arose out of primarily personal transactions, specifically "to purchase household items . . . and basic necessities." (*Id.* ¶ 40). Third, Plaintiff alleges that Defendants are debt collectors, as they "use[] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [they] regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6); *see* ECF No. 1 ¶¶ 16–17, 43, 55–56.

Finally, Plaintiff alleges conduct violative of the FDCPA in nine separate ways. (ECF No. 1 ¶ 57). Allegations (c) through (h) in Paragraph 57 are violative of § 1692e, which focuses on false or misleading representations. Specifically, Plaintiff alleges that Defendants lied about their occupation, place of business, and business name; made false threats of litigation; falsely implied Plaintiff had committed a crime; and failed to give the so-called "mini-Miranda" warning. (*Id.* ¶¶ 44–52, 57c–h). Additionally, allegation (a) is violative of § 1692b and c, which concern communications with persons other than the consumer. Plaintiff alleges that Defendants left inappropriate messages with the mother of her boyfriend's children for the purpose of obtaining Plaintiff's location information. (*Id.* ¶¶ 44, 57a). Allegation (b) is violative of § 1692d, which

4

concerns harassment and abuse. Specifically, Defendants "attempt[ed] to dissuade her from obtaining legal representation while at the same time threatening her with civil suits and criminal prosecution." (*Id.* ¶ 57b). Lastly, allegation (i) is violative of § 1692g(a), which requires a notice of debt collection. Plaintiff never received such a notice after Defendants initiated their collection efforts. (*Id.* ¶¶ 52, 57i).

Reviewing Plaintiff's allegations in Count One, the Complaint sets out sufficient facts that, taken as true, state a sufficient and meritorious claim that is likely to succeed. Thus, factor one weighs in favor of default judgment on the FDCPA claim.

    2. *Violations of the Ohio Consumer Sales Practice Act (Count Two)*

In Count Two of the Complaint, Plaintiff alleged violations of the OCSPA. That statute provides:

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

O.R.C. § 1345.02(A).

Plaintiff alleges that Defendants are suppliers, as they are "engaged in the business of soliciting consumer transactions." O.R.C. § 1345.01(C); *see* ECF No. 1 ¶ 65 (citing *Taylor v. First Resolution Inv. Corp.*, 72 N.E.3d 573, 599–600 (Ohio 2016) (holding debt collector to be a "supplier" within meaning of OCSPA)). Plaintiff also alleges that Defendants engaged in unfair and deceptive acts connected with the debt collection transactions: throughout the Complaint, Plaintiff alleges that Defendants lied about their place of business, falsely threatened Plaintiff with litigation knowing that no complaints had been filed, and called Plaintiff's family and acquaintances under those false pretenses, among other conduct. (ECF No. 1 ¶¶ 44–52). *See also id.* ¶ 69 (citing *Kelly v. Montgomery Lynch & Assocs., Inc.*, 2008 WL 1775251, at *11 (N.D. Ohio

Apr. 15, 2008) ("[A]ny violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of [O.]R.C. § 1345.02 and/or § 1345.03")).

Again, taking all the facts in Plaintiff's Complaint as true, the allegations in Count Two are sufficient to state a meritorious claim. This weighs in favor of default judgment on the OCSPA claim also.

### B. Prejudice to Plaintiff

Having found Plaintiff's claims sufficient and meritorious, the Court must examine the remaining default judgment factors listed in *Russell*. The next to consider is possible prejudice to Plaintiff if default judgment is not granted. Plaintiff claims she will be prejudiced if her Motion is denied, as "Defendants are unlikely to appear or defend this suit," and Plaintiff "will not be able to enforce her rights." (ECF No. 10 at 6). The Court concurs. The alleged "campaign of harassment" occurred over two years ago (ECF No. 1 ¶¶ 32, 43), and still Plaintiff remains without relief. To deny default judgment, over a year after this case was initiated, would mean Plaintiff's efforts at a civil resolution were futile. Moreover, were she to file another lawsuit, all indications are that she would return to this stage: default judgment. Courts find the prejudice factor to be satisfied under such circumstances. *See, e.g.*, *Toler v. Glob. Coll. of Nat. Med., Inc.*, 2016 WL 67529, at *7 (E.D. Mich. Jan. 6, 2016). Accordingly, the prejudice factor weighs in favor of default judgment.

### C. Amount of Money at Stake

Next, the Court considers the amount of money at stake. Plaintiff alleges damages, costs, and fees totaling $15,773.50. (ECF 10 at 1). This total is on the lower end of the spectrum for typical federal cases. Notably, when this Court sits in diversity jurisdiction, the amount in

controversy *must* exceed $75,000—nearly five times the requested relief. *See* 28 U.S.C. § 1332. As measured against other cases, the amount of money at stake in this matter is much less substantial. Other courts are in accord. *See, e.g.*, *Johnson v. Lo*, 2021 WL 5236552, at *3 (N.D. Cal. Oct. 21, 2021) (total of $14,921.00 "is not substantial"); *Schenker, Inc. v. Predator Mogulwear, Inc.*, 2007 WL 4556915, at *2 (N.D. Cal. Dec. 20, 2007) ($75,883.13 "is not substantial" and "pales in comparison" to amounts in other cases). This factor weighs in favor of default judgment.

### D. Possible Disputed Material Facts

As for the possibility of disputed material facts, Defendants have given the Court little to evaluate; they have not participated in this case in any capacity aside from limited e-mail communications attached to Plaintiff's Motion. (ECF No. 10-3). Plaintiff states in her Motion that Defendants "attempted to dispute the underlying facts" through those e-mails, "claiming that they had sold the debt in question prior to the conduct at issue in this case." (ECF No. 10 at 8). Yet, when Plaintiff's counsel "caught [them] in a lie," the e-mail thread went silent. (*Id.*). That silence continued through the responsive pleading deadline, at which point Defendants "forfeited their right to dispute any of Plaintiff's allegations by not answering the Complaint." *Tomlinson v. E. Recovery & Remediation Grp., LLC*, 2019 WL 1380313, at *4 (E.D. Mich. Mar. 27, 2019). Given the fact that Defendants have yet to appear or respond to Plaintiff's subsequent e-mails, it seems unlikely that Defendants would dispute the factual allegations even if provided the opportunity. Thus, this factor weighs in favor of default judgment.

### E. Default Due to Excusable Neglect

Excusable neglect did not play a role in Defendants' default in this case. Both Defendants were served properly, obtained legal counsel who corresponded briefly with Plaintiff's attorney,

7

and were made aware of both the entry of default and Plaintiff's intent to file a Motion for Default Judgment. (ECF Nos. 4, 5, 10-3). Nevertheless, Defendants have failed to appear or otherwise defend over the past year. Defense counsel even admitted that service was proper on Defendant APG but still ignored the responsive pleading deadline. (*Id.* at 3). All these facts are indicative of actual disregard, rather than excusable neglect. As such, this factor favors default judgment.

### F. Preference for Decisions on the Merits

Finally, the Court must consider "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1472. Inevitably, this factor is in tension with default judgment. Where trial on the merits is not attainable, however, courts recognize that this policy preference must yield to the needs of litigants actually before them. *See, e.g.*, *Toler*, 2016 WL 67529, at *9 ("[W]hile public policy favors resolution of cases on the merits, Defendants and their Counsel have consistently ignored opportunities for a merits-based resolution by refusing to respond in this matter . . . . 'Effective judicial administration requires that at some point disputes be treated as finally and definitively resolved.'" (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2693 (3d ed.))). Since all other factors weigh decisively in favor of default judgment, and since a decision on the merits is neither realistic nor attainable in this case, policy preferences will not preclude default judgment. Plaintiff's Motion for Default Judgment (ECF No. 10) is **GRANTED**.

### III. DAMAGES

Having found default judgment proper, the Court next must determine the appropriate measure of damages. "Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (internal quotation marks omitted). Rule 55(b)(2) permits the Court to conduct an

8

evidentiary hearing to determine damages, but it does not require one. *See also Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). In some cases, courts forego the evidentiary hearing and find "affidavits or declarations submitted in support of the motion for default judgment to be sufficient." *Scott v. Equifax Info. Servs., LLC*, 2020 WL 1672659, at *2 (E.D. Mich. Apr. 6, 2020). Plaintiff urges this latter approach and asks the Court to enter a judgment for $15,773.50 in total damages, costs, and fees. (ECF No. 10 at 6, 16).

"Numerous courts have awarded damages for emotional distress caused by violations of the FDCPA without a hearing, based on the statements contained in the plaintiff's affidavit." *McIntosh v. Check Resolution Serv., Inc.*, 2011 WL 1595150, at *4 (E.D. Mich. Apr. 27, 2011) (collecting cases). "Where, as here, the plaintiff's own testimony is [her] only evidence of emotional damages, [s]he must explain the circumstances of [her] injury in reasonable detail and not rely on conclusory statements, unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Harding v. Check Processing, LLC*, 2011 WL 1097642, at *2 (N.D. Ohio Mar. 22, 2011) (internal quotation marks omitted). Here, Plaintiff has submitted a signed declaration with her Motion for Default Judgment. (ECF No. 10-1). The declaration is consistent with the Complaint and describes her damages in reasonable detail. Accordingly, the Court has sufficient information to evaluate Plaintiff's claim for damages, and no hearing is necessary.

### A. Statutory Damages

Plaintiff requests $1,000.00 in statutory damages under the FDCPA (ECF No. 10 at 9), which is the statutory maximum. 15 U.S.C. § 1692k(a)(2)(A). When determining what statutory damages to award, a court should consider "the frequency and persistence of noncompliance by

the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Id.* § 1692k(b)(1). On the Court's review, Plaintiff's request should be granted, as the uncontested allegations in Plaintiff's Complaint establish that Defendants have engaged in several purposeful violations of the FDCPA. *See* ECF No. 1 ¶ 43 (describing "a campaign of harassment, intimidation, and extortion"). Under such circumstances, a maximum statutory award is appropriate. *See, e.g.*, *Harding*, 2011 WL 1097642, at *3 (finding "several purposeful violations of [the] FDCPA" warranted "the full $1,000.00 in statutory damages").

Plaintiff also requests $600.00 in statutory damages under the OCSPA. (ECF No. 10 at 15). If a supplier commits a deceptive act after an Ohio state court already has concluded that the act violates O.R.C. § 1345.02, a consumer may recover three times its "actual economic damages or two hundred dollars, whichever is greater." O.R.C. § 1345.09(B). Multiple violations causing "'separate and distinct harm'" can support multiple statutory awards. *Gilden v. Platinum Holdings Grp., LLC*, 2019 WL 590745, at *3 (S.D. Ohio Feb. 13, 2019) (quoting *Charvat v. NMP, LLC*, 656 F.3d 440, 452 (6th Cir. 2011), and awarding $600.00 for three OCSPA violations). Based upon the uncontested allegations in Plaintiff's Complaint, Defendants have committed at least three distinct acts which are "unfair or deceptive" under established Ohio law. Defendants falsely threatened to bring lawsuits against Plaintiff, falsely held themselves out as attorneys, and invaded Plaintiff's privacy by contacting persons associated with her regarding the debt. (ECF No. 1 ¶¶ 57a, c, d). As discussed *supra*, each of these acts violated the FDCPA and thus were unfair or deceptive under Ohio law as well. *See Kelly*, 2008 WL 1775251, at *11. As such, Plaintiff's requested statutory award of $600.00 under the OCSPA is appropriate.

### B. Actual Noneconomic Damages

The FDCPA allows a consumer to recover "any actual damage sustained" as a result of a debt collector's failure to comply with the FDCPA. 15 U.S.C. 1692k(a)(1). Actual damages "may include compensatory damages for emotional distress, humiliation, and embarrassment." *Dowling v. Litton Loan Servicing, LP*, 2006 WL 3498292, at *10 (S.D. Ohio Dec. 1, 2006).

Here, Plaintiff seeks $10,000.00 in actual damages (ECF No. 10 at 10) and has submitted a signed declaration setting forth the basis for her claim. (ECF No. 10-1). Plaintiff's actual damages consist of two parts: (1) a $5,000.00 claim for invasion of privacy; and (2) a $5,000.00 claim for other emotional distress. (ECF No. 10 at 10–11). The Court will address these in turn.

Regarding invasion of privacy, Plaintiff casts Defendants' conduct in communicating her financial situation with others as "inherently degrading." (ECF No. 10 at 10). It now is conclusively established that Defendants "called the mother of Plaintiff's boyfriend's children" and left a message threatening Plaintiff with litigation. (ECF No. 1 ¶¶ 44, 57a; No. 10-1 ¶ 6). Under similar circumstances, where debt collectors had shared financial information with the debtor's relatives and acquaintances, another court in this Circuit awarded damages in the same requested amount. *See Spurlock v. Deshane Holdings*, 2020 WL 12968538, at *3 (W.D. Tenn. Nov. 13, 2020) (awarding $5,000.00 for the "humiliation, embarrassment, and anxiety" from having a creditor share private financial details with plaintiff's fiancé). On review, the Court finds Plaintiff's request for $5,000.00 in actual damages resulting from the Defendant's third-party contacts to be supported and appropriate.

Second, the Court turns to Plaintiff's claim for emotional distress damages resulting from the direct threats lodged by Defendants. Plaintiff declares that "at some points during the harassment period, the debt collectors would threaten lawsuits, further phone calls, and to expose

[her] personal information." (ECF No. 10-1 ¶ 7). As a result, she experienced "stress, anxiety, nausea, humiliation, embarrassment, depression, annoyance, aggravation, frustration, difficulty focusing at work, and worry." (*Id.* ¶ 8). Further elaborating, Plaintiff declares that she was a "nervous wreck," that her previously-diagnosed severe depression was exacerbated, that the stress caused her "increased migraines at a minimum of four times per week," and that she "experienced emotional distress every day" for months. (*Id.* ¶¶ 9–12). The Court finds an award of $5,000.00 to be appropriate and supported by the evidence submitted. *Cf. Blevins v. MSV Recovery LLC*, 2020 WL 4365634, at *5 (S.D. Ohio July 30, 2020) (awarding $5,000.00 in emotional distress damages to FDCPA plaintiff on evidence of panic attacks, difficulty sleeping, and trouble focusing at work, as submitted in declaration).

### C. Attorney's Fees and Costs

"The FDCPA mandates the award of 'a reasonable attorney's fee' and costs to a prevailing party." *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009) (citing 15 U.S.C. § 1692k(a)(3) and *Lee v. Thomas & Thomas*, 109 F.3d 302, 307 (6th Cir. 1997)). Pursuant to that fee-shifting provision, Plaintiff seeks $3,545.00 in attorney's fees, $402.00 in costs, and $226.50 in expenses. (ECF No. 10 at 12).

The Court first will evaluate the request for attorney's fees. As explained in *Miller v. Ability Recovery Services, LLC*:

> The starting point for determining the amount of a reasonable attorney fee is the "lodestar" amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled. A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney. The prevailing market rate in the relevant community is a useful indication of what constitutes a reasonable rate. The "prevailing market rate" is defined as that rate which lawyers of comparable skill and experience can reasonably expect to command.

2019 WL 1227777, at *5 (S.D. Ohio Mar. 15, 2019) (internal quotation marks and citations omitted).

Plaintiff's counsel has calculated his fees from a lodestar rate of $300 per hour for himself and $50 per hour for his paralegal. (ECF No. 11). Counsel has presented ample evidence, by way of declaration (ECF No. 10-2), that these are reasonable hourly rates. In similar FDCPA cases, courts in this District awarded Counselor Hilton fees of $250 and $275 per hour. *See Grimm*, 2019 WL 4508921, at *4 (S.D. Ohio Sept. 19, 2019); *Blevins*, 2020 WL 4365634, at *6. In other cases, Counselor Hilton has billed up to $325 per hour. (ECF No. 10-2 ¶ 3). The requested rate of $300 per hour is proportionate to Counselor Hilton's own past fee awards and to the prevailing market rate for attorneys of comparable experience. The rate for the work of the firm's paralegal, at $50 per hour, is reasonable as well. *See Grimm*, 2019 WL 4508921, at *4 (awarding $50 per hour).

The hours multiplier also must be reviewed to ensure that the effort expended on the client's behalf reasonably aligns with the demands of the case. *See Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1173 (6th Cir. 1990) ("The standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed."). Here, Plaintiff's counsel billed 11.7 hours for his own work and 0.7 hours for the paralegal's work. (ECF No. 11). The Court has reviewed counsel's time logs (*Id.*) and finds the entries to be appropriate. It also finds that 12.4 total hours was a reasonable amount of time to perform research, file this lawsuit, and draft the default judgment motion.

Finally, the FDCPA permits a prevailing plaintiff to recover costs. 15 U.S.C. § 1692k(a)(3). Plaintiff seeks costs totaling $628.50, composed of $402.00 in filing fees and $226.50 in "service of process" expenses. (ECF No. 10 at 12, 14). On review, the Court concludes that the costs sought by Plaintiff are reasonable. *See Brown v. Halsted Fin. Servs., LLC*, 2013 WL 693168, at *3 (S.D.

Ohio Feb. 26, 2013) (awarding filing fee as costs); *Thompson v. Rosenthal*, 2014 WL 7185313, at *13 (S.D. Ohio Dec. 16, 2014) (awarding service of process expenses as costs). As such, the Court will award the full amount requested.

### D. Total Damages

To summarize, the Court awards $1,600.00 in statutory damages, $10,000.00 in actual damages, $3,545.00 in attorney's fees, $402.00 in costs, and $226.50 in expenses, for a total judgment of $15,773.50.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment against Defendants APG and Carruba is **GRANTED**. A **DEFAULT JUDGMENT** is entered against the two named Defendants, and damages, costs, and fees are awarded in the full requested amount of **$15,773.50**. This case is hereby **CLOSED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 28, 2022**